**UNITED STATES DISTRICT COURT**

**DISTRICT OF MINNESOTA**

BRAD ALAN VOORHEES,

Petitioner,

v.

DAVID CRIST,

Respondent.

Civil No. 01-1516 (JRT/JGL)

**MEMORANDUM OPINION AND ORDER**

Brad Alan Voorhees, #193042, Minnesota Correctional Facility, 970 Pickett Street North, Bayport, MN, 55003, *pro se*.

Mark S. Rubin, Assistant County Attorney, ST. LOUIS COUNTY ATTORNEY'S OFFICE, 501 Courthouse, 100 North Fifth Avenue West, Duluth, MN 55802, for respondent.

Petitioner Brad Voorhees ("Voorhees") is serving a sentence for first-degree premeditated murder at the Minnesota Correctional Facility in Stillwater, where respondent David Crist is the warden. Voorhees has filed an application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. This matter is now before the Court on Voorhees's objections to the Report and Recommendation of United States Magistrate Judge Jonathan Lebedoff, dated August 15, 2002. The Magistrate Judge recommended that Voorhees's application be denied. The Court has conducted a *de novo* review of

JUL 2 2 2003
FILED
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD.
DEPUTY CLERK

Voorhees's objections pursuant to 28 U.S.C. § 636 (b)(1)(C) and D. Minn. LR 72.1(c)(2). For the reasons set forth below, the Court adopts the Report and Recommendation and dismisses Voorhees's application.

## BACKGROUND

### I. Factual Background

In 1993, Voorhees and Carolyn Seitz ("Seitz") were married. Their marriage soon began to deteriorate, and Voorhees began to drink heavily and stay out all night. In May 1996, a doctor gave Voorhees a prescription for the antidepressant drug Prozac. On July 12, 1996, Seitz decided the marriage was over and moved out of their apartment. Upon receiving divorce papers two weeks later, Voorhees called Seitz at her parents' home and said he was going to commit suicide by taking pills. Seitz told Voorhees that if he tried that, he would end up brain dead with someone feeding him through a straw for the rest of his life. Voorhees did not attempt suicide.

Voorhees continued to drink, and eventually began using methamphetamine. On August 2, 1996, Voorhees's supply of Prozac ran out but he did not refill the prescription. On August 5, Voorhees finished his remaining methamphetamine and then, according to his testimony at trial, decided to get straight. Voorhees went to Wal-Mart to refill his Prozac prescription, where he ran into Seitz. He noticed she was purchasing a douche, and took it to mean that she was seeing another man. Voorhees attempted to talk with Seitz but she told him to sign the divorce papers and leave her alone.

Later that night, Voorhees went back to Wal-Mart and purchased a .22 caliber rifle and a box of ammunition. Voorhees testified that he had decided to shoot himself in front of Seitz. At about 2:00 a.m., Voorhees put the rifle in the trunk of his car and drove to Seitz's workplace, Residential Service, Inc. ("RSI"). Voorhees parked one street up from RSI, took the rifle out of the trunk and loaded it with eleven bullets. He walked down a dark path that led to RSI, and waited for Seitz to come out. When Seitz saw him, she told him to sign the divorce papers and get out of her life, that she did not love him and there was someone else. Voorhees testified that he reacted by firing the rifle until it stopped. Seitz was killed and Voorhees fled, and two hours later he called 911 to turn himself in.

Voorhees's blood alcohol level at 4:53 a.m. on August 6, 1996 was 0.03. Blood and urine tests taken at approximately 6:00 a.m. that day indicated 154 nanograms per milliliter of Prozac in the blood (which is well below the therapeutic level); no methamphetamine in the blood; negligible methamphetamine in the urine; and no alcohol in the blood. Voorhees's defense at trial was involuntary intoxication. His theory was that he became involuntarily intoxicated by ingesting a combination of Prozac, methamphetamine, and alcohol.

## II. Procedural Background and State Court Findings

In 1998, a jury in St. Louis County, Minnesota convicted Voorhees of first-degree premeditated murder. The Minnesota Supreme Court later had two opportunities to review Voorhees's case. The court first reviewed his case on direct appeal, and affirmed

Voorhees's conviction on May 13, 1999. *See State v. Voorhees*, 596 N.W.2d 241 (Minn. 1999) ("*Voorhees I*"). After losing this direct appeal, Voorhees sought post-conviction relief in the trial court, which was denied. The Minnesota Supreme Court later affirmed the denial of post-conviction relief. *See Voorhees v. State*, 627 N.W.2d 642 (Minn. 2001) ("*Voorhees II*").

### A. Direct Appeal – *Voorhees I*

On direct appeal, the Supreme Court affirmed Voorhees's conviction by the jury, making the following findings. First, the court concluded that Voorhees was not entitled to a jury instruction on involuntary intoxication because he did not make a prima facie showing on any element of that defense. *Voorhees I*, 596 N.W.2d at 250-51. Second, the court found that there was "substantial" evidence that Voorhees acted with premeditation,[1] which supported the jury's verdict of premeditated murder. *Id.* at 253. Third, the court found nothing in the record to indicate bias by a grand juror whose friend had dated Seitz, and held that Voorhees's conviction negated any asserted unfairness due to bias by the grand juror. *Id.* at 253-54. Fourth, the Supreme Court found no merit in Voorhees's claim that the prosecution misled the grand jury by withholding blood

[1] The court specifically noted evidence that: Voorhees became jealous when he saw Seitz purchase a douche, suspecting she was sleeping with another man; shortly after seeing her at Wal-Mart, Voorhees purchased the rifle used to kill her; Voorhees first told the police that he bought the rifle and killed Seitz out of jealousy; after purchasing the rifle, Voorhees went home, walked his dog, read the rifle's owner's manual, and changed into dark clothing; Voorhees drove to Seitz's workplace, knowing she would be alone, hid in the dark and watched Seitz come out of her work; Voorhees shot Seitz eleven times from several different angles with a rifle that required the trigger to be pulled for each shot; and after the shooting, Voorhees left Seitz lying on the ground and waited two hours before calling 911. *State v. Voorhees*, 596 N.W.2d 241, 253 (Minn. 1999) ("*Voorhees I*").

evidence from its consideration. *Id.* at 254. Fifth, the court did not find sufficient evidence to support Voorhees's claims of prosecutorial misconduct based on questions the prosecution asked him on cross-examination[2] and on a statement the prosecutor made in his closing statement.[3] *Id.* Sixth, the Supreme Court held that the trial court did not err by denying Voorhees's request to substitute a new public defender as his trial counsel. *Id.* at 254-55. Finally, the court determined that Voorhees offered no proof that his trial counsel performed deficiently, and therefore could not satisfy the first prong needed to show ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668 (1984). *Voorhees I*, 596 N.W.2d at 255.

### B. Denial of Post-Conviction Relief – *Voorhees II*

Voorhees also filed a *pro se* motion for post conviction relief, alleging violations of due process at trial and on appeal, errors in jury instructions, newly-discovered evidence, prosecutorial misconduct, ineffective assistance of trial and appellate counsel, and insufficient evidence of premeditation. The trial court denied post-conviction relief without an evidentiary hearing. On June 21, 2001, the Minnesota Supreme Court affirmed the denial of post-conviction relief, making the following findings. First, the court held that Voorhees's appellate counsel was not ineffective by failing to move to

[2] The Court found that both the questions at issue were valid on the merits, and that Voorhees's appeal on those issues were waived anyhow because his counsel did not object to the questions at trial. *Id.* at 254.

[3] The prosecutor had shown a photo of Seitz's blood-stained hand and stated that Voorhees had "blood on his hands." *Id.* The trial court denied Voorhees's motion for a mistrial on this basis, and the Supreme Court found that the trial court did not abuse its discretion in doing so. *Id.*

stay his direct appeal and remand the matter for an evidentiary hearing on his allegations that **trial** counsel was ineffective. *Voorhees II*, 627 N.W.2d at 649. Second, the Supreme Court held that Voorhees was not denied effective assistance of trial counsel, and that appellate counsel was not ineffective for failing to raise that issue on direct appeal. *Id.* at 650-51 Third, the court found that Voorhees's claim that he was entitled to an evidentiary hearing on the issue of blood evidence was procedurally barred. *Id.* at 651. Fourth, the Supreme Court found that the trial court's jury instruction on involuntary intoxication was not erroneous. *Id.* Fifth, the court found that Voorhees's claim that the trial court should have *sua sponte* instructed the jury on voluntary intoxication was procedurally barred. *Id.* at 652. Finally, the court found that Voorhees was not entitled to counsel or an evidentiary hearing at the post-conviction hearing, and that the post-conviction court did not err by failing to make findings of fact or conclusions of law. *Id.*

Voorhees filed his § 2254 petition on August 20, 2001. The petition raises many claims, which the Magistrate Judge organized into four groups: (1) deficiencies in the grand jury process; (2) ineffective assistance of counsel; (3) prosecutorial misconduct; and (4) denial of due process.

## ANALYSIS

### I. Magistrate Judge's February 22, 2002 Order

Voorhees first objects to the Magistrate Judge's February 22, 2002 Order, which struck respondent's answer to the habeas petition and ordered respondent to file an

amended answer within certain guidelines. (*See* Docket No. 17.) The Court cannot consider Voorhees's objections to this Order because he did not appeal it within ten days as required by Local Rule 72.1(b)(2). This rule governs appeals of orders on non-dispositive pre-trial matters by Magistrate Judges. *See* D. Minn. LR 72.1(b)(2). Voorhees never filed a formal appeal of this order, and his first statement objecting to it does not appear in the record until April 8, 2002, in Voorhees's Reply to respondent's amended answer. (*See* Docket No. 19.) This is well beyond the ten-day time limit for appeals, and Voorhees's present objection is even farther beyond the limit. Therefore, the Court may not consider Voorhees's objection to the Magistrate Judge's February 22, 2002 Order.

## II. Report and Recommendation

This Court's power to grant habeas corpus relief to state prisoners is governed by the "Antiterrorism and Effective Death Penalty Act of 1996." That statute provides in relevant part that this Court may not grant habeas corpus relief to a state prisoner on any issue that was adjudicated on the merits in state court unless the adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

When, as here, a petitioner challenges his confinement under § 2254, the Court may not disregard the state court's factual determinations. The law requires that "a determination of a factual issue made by a State court shall be presumed to be correct." 28 U.S.C. § 2254(e)(1). Voorhees has the burden of rebutting this presumption by clear and convincing evidence. *Id. See Lee v. Gammon*, 222 F.3d 441, 442 (8th Cir. 2000).

The Magistrate Judge found that Voorhees had not met this burden on any of the grounds of his habeas petition. Voorhees objects to all of the Magistrate Judge's conclusions. The Court will now examine Voorhees's objections according to the Magistrate Judge's categorization.

**A. Grand Jury**

Voorhees objects to the Magistrate Judge's determination on two issues related to the grand jury that indicted him. First, Voorhees argues that the grand jury was unconstitutionally impaneled because a friend of Seitz, the victim, was allowed to sit on the grand jury. The Minnesota Supreme Court found that the grand juror stated he could be fair and impartial, and that nothing in the record suggested the grand juror was biased. *Voorhees I*, 596 N.W.2d at 253-54. The Court further held that the petit jury's ultimate verdict that Voorhees was guilty of premeditated murder confirmed that probable cause existed as to his guilt. *Id.* at 254. Because probable cause was confirmed, the court held, any assertion of unfairness on the part of the grand juror was negated. *Id.* (relying on *United States v. Mechanik*, 475 U.S. 66 (1986)).

Voorhees maintains that the grand juror was biased, and argues that the Minnesota Supreme Court misapplied the U.S. Supreme Court's decision in *Mechanik*. This Court disagrees. To prevail on his allegations, Voorhees must show that the state supreme court's decision was based on an "unreasonable determination of the facts" in light of the evidence presented in the state courts. 28 U.S.C. § 2254(d)(2). Voorhees has presented no evidence of bias by the grand juror, nor has he shown that the Minnesota Supreme Court made an unreasonable determination of facts regarding the grand juror. Voorhees also has the burden of showing that the Minnesota Supreme Court unreasonably applied the U.S. Supreme Court's decision in *Mechanik*. 28 U.S.C. § 2254(d)(1). That case involved an indictment obtained in violation of Federal Rule of Criminal Procedure 6(d), which specifies who may appear as a witness before a grand jury. *See Mechanik*, 475 U.S. at 67. The defendants were ultimately convicted in a trial that was conducted without error. *Id.* The Court explained that the purpose of Rule 6(d) is to safeguard the indictment process "against the danger that a defendant will be required to defend against a charge for which there is no probable cause to believe him guilty." *Id.* at 70. A violation of the grand jury rules – such as, in this case, the seating of a potentially biased grand juror – has the "theoretical potential to affect the grand jury's determination whether to indict" the defendant. *Id.* The Court held, however, that

> the petit jury's subsequent guilty verdict means not only that there was probable cause to believe that the defendants were guilty as charged, but also that they are in fact guilty as charged beyond a reasonable doubt. Measured against the petit jury's verdict, then, any error in the grand jury proceeding connected with the charging decision was harmless beyond a reasonable doubt.

*Id.*

The same reasoning applies in this case. Even if the allegedly biased grand juror caused some irregularity in the grand jury's charging decision – and Voorhees presents no such evidence – the petit jury's ultimate guilty verdict renders that error harmless beyond a reasonable doubt. Voorhees has presented no argument to show why *Mechanik* does not apply in this case, and the Court finds that the Minnesota Supreme Court reasonably applied the U.S. Supreme Court's decision.

Second, Voorhees argues that he was prejudiced because the prosecutor withheld blood evidence regarding intoxication from the grand jury. Voorhees essentially claims that the state did not send his blood to be tested, misled the grand jury about the levels of intoxicants in his blood, and denied him the right to test his own blood for Prozac or other substances. The Minnesota Supreme Court noted that the post-conviction court rejected these allegations, and agreed that they are "without merit." *Voorhees I*, 596 N.W.2d at 254. The Supreme Court also noted that the state did test Voorhees's blood for Prozac, and that the amount found was presented at trial.[4] *Id.* The Magistrate Judge found no error in these conclusions, and the Court now agrees. The state courts' factual

---

[4] Voorhees suggests that the State falsely claimed that the blood sample was depleted to the point that no testing was possible. Voorhees may be referring to a statement by the Minnesota Supreme Court in its consideration of his direct appeal. *See Voorhees I*, 596 N.W.2d at 255 ("The record indicates that the blood sample reference by Voorhees had been depleted during the state's testing to the point that no further testing was possible."). Voorhees included documents with his post-conviction materials designed to prove that the samples were not depleted, but these documents were dated August 6, 1996, the date Voorhees was arrested. (Pet. Traverse to Respondent's Amended Answer, Exhibits 9-10.) The Supreme Court further addressed this contention in *Voorhees II*, noting that these documents do not show that the blood sample was not depleted. *Voorhees II*, 627 N.W.2d at 651. Voorhees presents no evidence to challenge the court's conclusion.

determinations are presumed correct, and Voorhees may only overcome this presumption by showing clear and convincing evidence that they are wrong. 28 U.S.C. § 2254(e)(1). Other than his allegations, Voorhees has presented no such evidence. Therefore, the Court finds that the Minnesota Supreme Court's determination of this question was valid.

**B. Request For Substitute Counsel**

Voorhees argues that the Minnesota Supreme Court erred by affirming the trial court's refusal to substitute a new public defender as his trial counsel. *See Voorhees I*, 596 N.W.2d at 254-55. Voorhees sought new trial counsel because, he claimed, his lawyer belittled him and yelled at him. *See id.* at 255. The trial court admonished Voorhees that he need not personally get along with his lawyer for the lawyer to provide competent representation. *See id.* The Supreme Court agreed with this statement, and held that the trial court did not err by refusing to substitute new counsel. *Id.* Voorhees now objects to the Magistrate Judge's conclusion that the Minnesota Supreme Court was correct.

A criminal defendant does not have the absolute right to counsel of his own choosing. *Carey v. State of Minnesota*, 767 F.2d 440, 441 (8th Cir. 1985). "A criminal defendant who is dissatisfied with appointed counsel must show good cause to warrant substitution of counsel, such as a conflict of interest, an irreconcilable conflict, or a complete breakdown in communication between the attorney and the defendant." *Smith v. Lockhart*, 923 F.2d 1314, 1320 (8th Cir. 1991). Voorhees claims that the Minnesota Supreme Court made its decision based on an incomplete version of the facts. He argues

that the trial court cut him off when he requested a new attorney, and that the problems with trial counsel went beyond yelling and belittling. As evidence, Voorhees points to records of the St. Louis County Sheriff's office, which contain a transcribed statement he made while in custody. This document quotes Voorhees as stating that trial counsel made "him feel like a cold-blooded murderer and tells me I'll get 30 [years] in prison." (Pet. Traverse to Respondent's Amended Answer, Exhibit 27A.) Voorhees also stated that all counsel did was yell at him, and that "we just don't get along." (*Id.*)

These allegations are not sufficient to show that the state court wrongly denied Voorhees's request for new counsel. The Sixth Amendment does not guarantee a "meaningful relationship" between an accused and his counsel. *Morris v. Slappy*, 461 U.S. 1, 14 (1983); *United States v. Swinney*, 970 F.2d 494, 499 (8th Cir. 1992). It is evident from the record that Voorhees did not enjoy a good relationship with his trial counsel, but he presents no additional information to show why the Minnesota Supreme Court's conclusion was incorrect. In the absence of such evidence, the Court must overrule Voorhees's objection on this ground.

### C. Ineffective Assistance of Counsel

To prevail on a claim of ineffective assistance of counsel, Voorhees must show that: (1) counsel's performance was deficient; and (2) he was prejudiced by that deficient performance. *Strickland*, 466 U.S. at 687. When evaluating the first prong, the Court must "indulge a strong presumption" that counsel performed as a reasonably competent attorney. *Id.* at 689. *See DeRoo v. United States*, 223 F.3d 919, 925 (8th Cir. 2000) ("A

defendant faces a heavy burden to establish ineffective assistance of counsel pursuant to section 2255.") (citation omitted). Voorhees has the burden of showing that his counsel's performance "fell below an objective standard of reasonableness," and was not within the range of competence demanded of attorneys in criminal cases. *Strickland*, 466 U.S. at 689. To establish the second prong, Voorhees must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

**1. Trial Counsel**

The Minnesota Supreme Court addressed Voorhees's allegations of ineffective assistance of trial counsel on direct appeal in *Voorhees I* and on consideration of post-conviction relief in *Voorhees II*. Voorhees now objects to the Magistrate Judge's finding that the *Voorhees I* court correctly found: (1) that trial counsel's failure to cross-examine the medical examiner on the time of Seitz's death did not constitute ineffective assistance of counsel; and (2) that trial counsel was not ineffective for failing to object when Voorhees was cross-examined regarding statements made to a friend that he was thinking about killing Seitz. Voorhees also objects to the Magistrate Judge's decision that the *Voorhees II* court correctly rejected his claim that trial counsel was ineffective for failing to pursue a defense of voluntary intoxication.

First, Voorhees claims that his trial counsel should have cross-examined the medical examiner on the time of death to establish that Seitz died immediately. Voorhees reasons that this would have explained to the jury why he did not seek help for Seitz after

shooting her. The Magistrate Judge concluded, and this Court agrees, that such a cross-examination may likely have had a negative impact on Voorhees's case. It may have created the inference that Voorhees shot the victim eleven times to make sure she was dead. Trial counsel was in a difficult position, and chose to risk the inference that Voorhees left Seitz to die, rather than emphasize on cross-examination that Voorhees shot her eleven times. Voorhees claims that he should prevail because a "jury would still rather hear that a person died immediately." (Pet. Br. at 7.) Voorhees may be correct about a jury's inclinations, but this does not mean that trial counsel was ineffective. Rather, trial counsel was making a strategic decision on how to best help his client. The Court owes a high degree of deference to well-supported strategic decisions by counsel. *Strickland*, 466 U.S. at 690-91. The Court thus concludes that the Minnesota Supreme Court did not err in concluding that Voorhees's trial counsel was reasonable in deciding not to cross-examine the medical examiner on the time of death.

Second, Voorhees contends that trial counsel should have objected to the prosecution's asking Voorhees whether he told a friend that he thought about killing Seitz.[5] The Minnesota Supreme Court found that Voorhees produced no evidence to show that this represented deficient performance. The Magistrate Judge agreed, and this Court finds that Voorhees's objections provide no additional evidence in his objections to change this conclusion. The Court also agrees with the Magistrate Judge that even if trial counsel's failure to object was deficient, it did not cause Voorhees prejudice. As the

[5] Voorhees testified that he never said such a thing. (Trial Tr. at 921.)

Minnesota Supreme Court found, the prosecution presented "substantial" evidence that Voorhees was guilty of premeditated murder. *See supra*, n.1. Based upon this evidence, the Court agrees with the Magistrate Judge that even if trial counsel had objected to the question, there is no reasonable probability that the outcome of the trial would have been different.

Third, Voorhees claims that trial counsel was ineffective by not pursuing a defense of voluntary intoxication. The Minnesota Supreme Court noted in *Voorhees II* that such an argument – whether framed as counsel's failure to employ the defense or the trial court's failure to issue an instruction on the subject *sua sponte* – was procedurally barred because Voorhees knew of but did not raise the issue on direct appeal. *Voorhees II*, 627 N.W.2d at 650-51. Voorhees argues that he did raise the issue on direct appeal, but the Supreme Court failed to address it. Voorhees's briefs to the Minnesota Supreme Court are not in the record, but this Court finds no evidence that Voorhees raised the issue on direct appeal, and trusts that the Minnesota Supreme Court faithfully addressed all the issues raised by the parties.[6] Thus, the court did not err in finding that Voorhees's choice-of-defense allegations are procedurally barred. The Supreme Court did address the issue indirectly, however, because Voorhees's allegations of ineffective appellate counsel rested upon trial counsel's failure to pursue a voluntary intoxication defense. *Id.*

[6] The State's brief on direct appeal to the Minnesota Supreme Court is in this Court's record. This document responds to Voorhees's contentions on direct appeal, and makes no mention of the choice-of-defense allegation. (*See* Docket No. 8, Appendix E at 30.)

Therefore, this Court will consider whether the Minnesota Supreme Court erred in its *Strickland* analysis of trial counsel's performance on this issue.

Voorhees contends that trial counsel's decision to proceed with an involuntary intoxication defense, rather than a voluntary intoxication defense, and counsel's failure to request a jury instruction on voluntary intoxication made his performance deficient under the first prong of *Strickland*. The Minnesota Supreme Court held in *Voorhees II* that it cannot question trial counsel's decision on what defense to pursue because it is a matter of trial strategy, which cannot be reviewed for competence. *Id.* at 651. The court also reiterated its holding from *Voorhees I* that trial counsel's performance was not deficient in any regard, and thus fails to meet the first *Strickland* prong. *Id.* The Magistrate Judge determined that the Supreme Court did not err, and noted reasons why trial counsel might choose to pursue the defense of involuntary intoxication instead of voluntary intoxication.[7]

Voorhees objects, arguing that the Magistrate Judge contradicted himself by finding that there was evidence to support a defense of involuntary intoxication for purposes of effectiveness of counsel, while earlier approving the Minnesota Supreme Court's finding that Voorhees did not present enough evidence to warrant a jury instruction on involuntary intoxication. *See Voorhees I*, 596 N.W.2d at 250 (explaining

[7] Specifically, the Magistrate Judge noted that on the night of the murder, before speaking to his attorney Voorhees made statements to the police supporting an involuntary intoxication defense. The Magistrate Judge also noted that involuntary intoxication defense was a complete defense, whereas a voluntary intoxication defense would not preclude conviction of a lesser offense. (*See* R&R at 21-24.)

that defendant did not make a *prima facie* showing of every element of the involuntary intoxication defense). These two findings are not contradictory. Just because Voorhees's counsel was ultimately unable to provide sufficient evidence to warrant a jury instruction on involuntary intoxication does not mean that he acted unreasonably in proceeding with the defense. The Court finds that the Minnesota Supreme Court did not err in declining to second-guess trial counsel's strategic decisions. In his objections, Voorhees does not show that these decisions were unreasonable, but only that he disagrees with them, citing his own opinions of the value of certain evidence. This is not sufficient to demonstrate ineffectiveness.

The Magistrate Judge further reasoned that even trial counsel's performance was deficient, Voorhees did not show that failure to pursue a voluntary intoxication defense would have changed the trial's outcome. The Court agrees. Voorhees's objections are primarily concerned with disputing the value of various pieces of evidence, and he does not argue that he would have been acquitted if counsel had pursued a different defense. In fact, Voorhees appears to believe that he would have been convicted in any event. He states that to "go with a defense that would set him free . . . would be very unreasonable given the evidence and confession. The only hopefully [sic] defense was . . . voluntary intoxication and **hopes of getting a lesser conviction**." (Pet. Br. at 6) (emphasis added). Thus, the Court agrees with the Magistrate Judge that even if trial counsel's performance was deficient in not pursuing a defense of voluntary intoxication, Voorhees suffered no prejudice as a result.

**2. Appellate Counsel**

Voorhees claims that his appellate counsel was ineffective on three grounds. First, Voorhees argues that appellate counsel was ineffective for failing to seek a stay of his appeal and a remand to a post-conviction court. Voorhees wanted appellate counsel to do this so he could seek an evidentiary hearing on his allegations that trial counsel was ineffective. The Minnesota Supreme Court held in *Voorhees II* that Voorhees erred in presuming that all ineffective assistance of trial counsel claims must be determined on post-conviction relief. *Voorhees II*, 627 N.W.2d at 649. The court also held that a hearing was not necessary because the record on direct appeal was sufficient to determine the claim without additional fact finding. *Id.*

The Magistrate Judge found that Voorhees did not present clear and convincing evidence to challenge the state court's finding. Voorhees objects, arguing that the record should have been further developed. Voorhees's objections mostly revolve around his contention that **trial** counsel was ineffective. For example, Voorhees states that "[i]t is beyond sound legal reasoning to say [that] the petitioner had the proper defense . . . ." (Pet. Br. at 8.) As discussed above, this is nothing more than disagreement with trial counsel's choice of defenses;[8] it does not constitute clear and convincing evidence that the state court's factual findings were wrong.

[8] The Minnesota Supreme Court also held that Voorhees's allegations of ineffectiveness against appellate counsel based upon her failure to challenge trial counsel's tactical decisions are without merit. *Voorhees II*, 627 N.W.2d at 651.

Second, Voorhees claims that appellate counsel was ineffective for failing to file a petition for rehearing following his direct appeal. The Minnesota Supreme Court noted that Voorhees made "no attempt to show prejudice" from this action, and found that "the record does not substantiate such a claim." *Voorhees II*, 627 N.W.2d at 649-50. The court thus concluded that the claim "lacks merit." *Id.* at 650. The Magistrate Judge agreed. In his objections, Voorhees merely claims that this decision by appellate counsel was error, but alleges no resulting prejudice.[9] Therefore, the Court concludes that the Minnesota Supreme Court was correct that this claim is without merit.

Third, Voorhees argues that appellate counsel was ineffective by failing to conduct a proper investigation into the blood evidence, claiming that had appellate counsel done so, she would have discovered that the state mishandled or tampered with the blood evidence. The Minnesota Supreme Court recognized that Voorhees raised the issue of blood evidence on direct appeal, and that it was therefore procedurally barred on post-conviction proceedings. *Id.* at 651. The Magistrate Judge discussed the merits of Voorhees's ineffectiveness claim on this ground, but he need not have done so. The Minnesota Supreme Court applied its own state rules in holding that an issue raised on direct appeal may not be considered on a subsequent petition for post-conviction relief. *Id.* *See State v. Knaffla*, 243 N.W.2d 737, 741 (Minn. 1976). Voorhees has not challenged this in his objections, but continues to argue the merits of the issue. The

[9] Voorhees did file for rehearing *pro se*. Voorhees contends that it is preferable to have an attorney file matters in court, but does not show that the result would have been different if his attorney filed the petition.

Minnesota Supreme Court addressed the issue on direct appeal in *Voorhees I*, and this Court has already found that Voorhees failed to show by clear and convincing evidence that the court's determination was wrong. *See supra*, Part II.A. Therefore, this Court has no reason to question the Supreme Court's determination, and Voorhees's objections must be overruled.

### D. Prosecutorial Misconduct

In his habeas petition, Voorhees alleges several instances of prosecutorial misconduct which, he claims, violated his rights to due process of law and a fair trial. He alleges that the prosecutor: (1) had him pulled out of the psychiatric ward, denied him proper care, and questioned him while he was under suicide watch; (2) did not "call the grand jury" until after a purported 20-day requirement; (3) persuaded the medical examiner to change his testimony regarding the time of Seitz's death; (4) allowed the public defender to "go forth with a no merit defense," and did nothing to ensure that the trial judge gave proper jury instructions; and (5) brought in hearsay statements regarding the statements of Ron Konczak, which the prosecutor allegedly knew to be untrue.

"Prosecutorial misconduct does not merit habeas corpus relief unless the misconduct infected the trial with enough unfairness to render [Voorhees's] conviction a denial of due process." *Roberts v. Bowersox*, 137 F.3d 1062, 1066 (8th Cir. 1998). To prove prosecutorial misconduct, Voorhees bears the "heavy burden" of showing that absent the alleged impropriety, the verdict probably would have been different. *Mack v. Caspari*, 92 F.3d 637, 643 (8th Cir. 1996). The Court examines the totality of

circumstances to determine whether Voorhees has met this burden. *Roberts*, 137 F.3d at 1066.

The Magistrate Judge determined that none of Voorhees's allegations of misconduct had merit. Voorhees objects to this conclusion, but makes no new arguments. Instead, he refers the Court to his previous pleadings. Based on these arguments, the Court concludes that the Magistrate Judge's determinations were correct. First, the Court agrees that Voorhees's allegations of being pulled out of the psychiatric ward do not raise any issue regarding fairness of the trial. Even if Voorhees's assertions in this regard are true, they do not show that such conduct was "so egregious that [it] fatally infected the proceedings and rendered his entire trial fundamentally unfair." *Mack*, 92 F.3d at 643 (quoting *Jones v. Jones*, 938 F.2d 838, 844-45 (8th Cir. 1991)).

Second, the Magistrate Judge correctly found that Voorhees did not state a claim by alleging that the prosecutor ignored the "twenty day requirement" to call the grand jury. Voorhees now claims that he was actually referring to a "14-day rule to call the grand jury" purportedly contained in Rule 9.01 of Minnesota Rules of Criminal Procedure. Rule 9.01, however, contains no such requirement, and does not even deal with the grand jury.[10] *See* Minn. R. Crim. P. 9.01. Therefore, the Court overrules Voorhees's objection based on any "rule to call the grand jury."

[10] Voorhees may be referring to a passage in the Comment to Rule 9, which provides that discovery by the prosecution to a criminal defendant must be completed within 14 days after the first appearance in district court following the indictment. *See* Minn. R. Crim. P. Comment – Rule 9. Voorhees presents no evidence that this passage is implicated in the present case.

Third, Voorhees alleges that the prosecutor knew that Seitz died rapidly, but got the medical examiner to change his testimony to indicate that the victim lived for thirty to sixty minutes. Voorhees presents no evidence to support this allegation. Moreover, even if Voorhees could establish that it was true, he has not shown that absent such misconduct, the verdict would have been any different. The Court concludes that given the substantial evidence of Voorhees's guilt presented at trial, the verdict would not have been different. Thus, this contention also fails.

Fourth, the Magistrate Judge correctly concluded that Voorhees's allegations about the prosecutor allowing defense counsel to present a "no merit defense" actually goes to whether trial counsel was effective. This Court has already addressed these questions and found that trial counsel was not ineffective. *See supra*, Part II.C.1. This contention therefore fails. Likewise, Voorhees's contention that the prosecutor failed to ensure that the trial judge gave the proper jury instructions begs the question of whether the trial court properly instructed the jury. The Court addresses this underlying claim below, and finds that the trial court acted properly. *See infra,* Part II.E. Therefore, this contention also fails.

Finally, Voorhees claims that the prosecutor improperly questioned him on cross-examination by asking whether he told his friend Rob Konczak that he thought about killing Seitz. The Minnesota Supreme Court squarely addressed this issue on direct appeal, finding that the prosecution "had a good-faith basis" for asking this question, and that it did not constitute prosecutorial misconduct. *Voorhees I*, 596 N.W.2d at 254. Voorhees has not presented any authority to show that this determination is wrong, so the

Court concludes that the Minnesota Supreme Court was correct. Voorhees's objection on this ground is therefore overruled.

### E. Due Process

Voorhees argues that the trial court committed errors that deprived him of his right to due process and a fair trial. These all revolve around the trial court's failure to *sua sponte* instruct the jury on the defense of voluntary intoxication. Voorhees contends that the court should have issued such an instruction, and that the Minnesota Supreme Court failed to properly review the record. As the Court has already noted, the Minnesota Supreme Court found that the question of a *sua sponte* instruction on voluntary intoxication is procedurally barred because Voorhees knew of but did not raise the issue on direct appeal. *Voorhees II*, 627 N.W.2d at 650-51. Voorhees now claims that the Minnesota Supreme Court failed to fully review the record and that it thus wrongly concluded that certain claims were procedurally barred. The Court agrees with the Magistrate Judge that the Supreme Court's actions were proper.

The Minnesota Supreme Court's ruling on the procedural bar may not be considered in a federal habeas corpus proceeding unless Voorhees "can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *Charron v. Gammon*, 69 F.3d 851, 857-58 (8th Cir. 1995). The Court finds that Voorhees cannot make any of these showings. First, he has not shown cause by demonstrating that his

failure to raise the issue on direct appeal was due to external forces that he could not control. *See Coleman*, 501 U.S. at 753. Second, as the Court has already noted, Voorhees has not shown that he suffered prejudice – i.e., that the outcome of the trial would have been different absent the procedural bar – from the failure to instruct on voluntary intoxication. Finally, Voorhees has not demonstrated a miscarriage of justice. To do so, Voorhees must produce new evidence to show that a constitutional violation occurred, allowing him to be convicted even though he was actually innocent. *Brownlow v. Groose*, 66 F.3d 997, 999 (8th Cir. 1995). Evidence is new "only if it was not available at trial and could not have been discovered earlier through the exercise of due diligence." *Amrine v. Bowersox*, 128 F.3d 1222, 1230 (8th Cir. 1997) (en banc). Voorhees has made no such showings. Therefore, the Court finds that the Minnesota Supreme Court's holding on the procedural bars must stand, and that Voorhees's objections in this regard should be overruled.

## III. Appealability

The Court determines that Voorhees has not made a "substantial showing of the denial of a constitutional right," as is required under 28 U.S.C. § 2253(c)(2). Moreover, the Court finds it unlikely that some other court would decide the issues raised in Voorhees's petition differently. Therefore, the Court will not grant a certificate of appealability.

**ORDER**

Based on the foregoing, all the records, files, and proceedings herein, the Court **OVERRULES** petitioner's objections [Docket No. 27] and **ADOPTS** the Magistrate Judge's Report and Recommendation [Docket No. 24]. Accordingly, **IT IS HEREBY ORDERED** that:

1. Petitioner's State Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254 [Docket No. 1] is **DISMISSED WITH PREJUDICE**.

2. For purposes of appeal, the Court does not certify the issues raised in petitioner's motion for appeal under 28 U.S.C. § 2253(c)(2).

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

DATED: July 22, 2003
at Minneapolis, Minnesota.

John R. Tunheim

JOHN R. TUNHEIM
United States District Judge